UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DEIDRE E. LANIER, M.D.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 3:09-0776 |
| v. | ) JUDGE ECHOLS |
| | ) |
| **SUNTRUST BANK, successor-in-interest** | ) |
| **to THIRD NATIONAL BANK IN** | ) |
| **NASHVILLE, et al.,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Defendant/Counter-Plaintiff SunTrust Bank ("SunTrust") filed a Motion for Summary Judgment (Docket Entry No. 17), to which Plaintiff/Counter-Defendant Deidre E. Lanier, M.D. ("Dr. Lanier"), filed a response in opposition (Docket Entry No. 32), and SunTrust filed a reply (Docket Entry No. 37). Dr. Lanier also filed a Motion For Summary Judgment (Docket Entry No. 28), to which SunTrust filed a response in opposition (Docket Entry No. 37), and Dr. Lanier filed a reply. (Docket Entry No. 41.)

The case originated in the Chancery Court of Davidson County, Tennessee, in August 2009 when Dr. Lanier filed suit for an injunction restraining SunTrust from continuing its efforts to foreclose on her medical building in Nashville due to her alleged failure to pay all amounts due under a promissory note secured by the real estate. The Chancellor found the terms of the promissory note were ambiguous and Dr. Lanier had shown both a likelihood of success on the

1

merits and irreparable harm. Consequently, the Chancellor entered the requested injunction.[1] (Docket Entry No. 18-8.) The same day, SunTrust removed the action to this Court on the basis of diversity jurisdiction and filed an answer including counterclaims against Dr. Lanier. The Court previously denied Dr. Lanier's motion to remand the matter to the Chancery Court and dismissed from the action the successor trustee, Defendant Robert C. Goodrich, Jr. (Docket Entry No. 16.)

## I. FACTS

Most of the facts are not disputed by the parties. SunTrust is a Georgia state banking corporation with its principal place of business in Atlanta, Georgia. Dr. Lanier is an individual residing in the state of Tennessee.

On March 18, 1993, Dr. Lanier signed a Small Business Administration Authorization and Loan Agreement (Docket Entry No. 18-12), pursuant to which a promissory note ("the note") was executed by the parties. (Docket Entry No. 35-1 at 2.) The note was prepared by Third National Bank in Nashville or its agents or employees. (Docket Entry No. 35, Lanier Aff. ¶ 1.)

The note is secured by real estate generally known as 404 Dr. D.B. Todd Jr. Blvd., Nashville, Davidson County, Tennessee, and described more particularly in the Deed of Trust recorded March 19, 1992, in Book 8892, Page 13, in the Davidson County Register of Deeds Office. (Docket

---

[1] The Court does not treat the Chancellor's decision, entered early in the case and before final judgment, as the law of the case for two reasons: (1) the decision was entered without any written legal analysis this Court can review and (2) following the decision would work a manifest injustice because it is the opinion of this Court that the language of the promissory note is not ambiguous on its face and evidence of whether Dr. Lanier understood the terms of the note is inadmissible parol evidence, as will be discussed later in this opinion. See Christianson v. Colt Indus. Operation Corp., 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'").

2

Entry No. 18-3.) Being the successor-in-interest to Third National Bank in Nashville under the note and the Deed of Trust, SunTrust is now the holder of the note.

Pursuant to the note, Dr. Lanier obtained a loan of $300,000.00.[1]  Dr. Lanier used the funds advanced to her pursuant to the note to build or improve the office building (encumbered by the Deed of Trust) out of which she has practiced medicine for the past fifteen (15) years.

The note provided in pertinent part:

> For value received, the undersigned promises to pay to the order of Third National Bank in Nashville . . . Three Hundred Thousand and 00/100 dollars, with interest on unpaid principal computed from the date of each advance to the undersigned at the rate of 7.50% percent per annum, payment to be made in installments as follows:
>
> Principal and interest at the rate of Seven and one-half percent (7.5%) payable as follows: Interest only payable monthly, beginning one (1) month from date, for a period of six (6) months; thereafter, $2,782.00, including principal and interest, payable monthly beginning seven (7) months from the date of Note; with the further provision that each said installment shall be applied first to interest accrued to date of receipt of said installment, and the balance, if any, to principal, and the balance of principal and interest due and payable on or before fifteen (15) years from date.
>
> Effective the first business day of the calendar quarter following first disbursement date of the loan, the rate of interest herein shall become the sum of one and one-half (1.5%) percentage points and the amount of the lower prime rate in effect and as published in The Wall Street Journal under Money Rates.  The change in rate of interest herein shall become effective on the first business day of the quarter and each quarter thereafter.  At such time as the interest rate changes, the periodic installment may be adjusted to reflect such change.
>
> Holder should give written notice to Borrower of each increase or decrease in the interest rate within 30 days after the effective date of each change; however, the fluctuation of the interest rate is not contingent on whether the notice is given.
>
> * * *

---

[1] Pursuant to Local Rule 56.01(g), the Court finds this fact is undisputed for purposes of summary judgment because Dr. Lanier failed to respond to SunTrust's Statement of Undisputed Material Fact ¶ 7.  (Docket Entry No. 29 at ¶ 7.)

3

> If this Note contains a fluctuating interest rate, the notice provision is not a pre-condition for fluctuation (which shall take place regardless of notice)[.] Payment of any installment of principal or interest owing on this Note may be made prior to the maturity date thereof without penalty.

(Docket Entry No. 35-1 at 2.)

The note matured on March 18, 2008, fifteen (15) years from the date on which the note was executed. By demand letter dated January 28, 2009, counsel for SunTrust notified Dr. Lanier that she was in default under the terms of the note for failure to pay the matured but unpaid principal, interest, and other fees under the note.[2] (Docket Entry No. 18-4.)

On February 9, 2009, counsel for SunTrust sent a copy of the repayment history to counsel for Dr. Lanier. (Docket Entry No. 18-30.) SunTrust filed suit on the note on April 3, 2009. SunTrust claims that private process servers were unable to effect service upon Dr. Lanier, but Dr. Lanier denies that any of SunTrust's attempts at service were diligent, as she continued to reside and work in the same places as she did during the term of the note.

On July 28, 2009, SunTrust served copies of the notice of foreclosure on Dr. Lanier, her counsel, the Internal Revenue Service, and others. (Docket Entry No. 18-25.) The notice of foreclosure was published in The City Paper on July 30, 2009 and August 6, 13 & 20, 2009, at a cost of $1,834.46. (Docket Entry No. 18-7.) On August 20, 2009, Dr. Lanier filed a complaint in Chancery Court seeking an injunction (Docket Entry No. 18-2), which the Chancellor granted on August 25, 2009. (Docket Entry No. 18-8.) Although the Chancellor found that the terms of the note "are ambiguous and it is not clear to the Court that the debtor understood all of the terms of the

---

[2]Dr. Lanier failed to respond to this Statement of Undisputed Fact by SunTrust. (Docket Entry No. 29 ¶ 14.) Pursuant to Local Rule 56.01(g), the Court finds the fact is undisputed for purposes of summary judgment.

4

Note," (id. at 1), the Chancellor did not offer any legal analysis to support her conclusion. SunTrust filed its removal notice the same day. (Docket Entry No. 1.)

SunTrust contends that the outstanding balance of the note, approximately $85,558.42,[3] remains unpaid and continues to accrue interest, and SunTrust continues to incur attorney's fees and costs of collection in connection with enforcement of the note. Dr. Lanier denies that she owes any outstanding balance on the note, claiming in her affidavit that for fifteen years she "paid the installments" on the note "in the amounts billed by Defendant SunTrust, paying the entire balance, inclusive of principal, interest and other charges." (Docket Entry No. 35, Lanier Aff. ¶ 5.) Dr. Lanier did not provide any documentary evidence to show that she had paid "the entire balance, inclusive of principal, interest and other charges."

The parties' legal dispute centers on the method by which the note was to be paid. SunTrust claims the note was a fixed monthly payment note, with a floating interest rate. As a result, the amount of Dr. Lanier's monthly payment that was applied to principal varied. When the rate of interest was higher, less of Dr. Lanier's payment went to principal. When the rate of interest was lower, more went to principal. Dr. Lanier also had a number of late charge assessments. (Docket Entry No. 20, Perigo Decl. ¶ 4.) SunTrust contends the note was to be paid in monthly installments of $2,782.00[4] and, pursuant to the terms of the note, all outstanding principal, interest, and other charges under the note became due and payable fifteen (15) years from the date upon which the note

---

[3]In the Statement of Undisputed Material Facts, however, SunTrust alleges that the outstanding balance as of September 21, 2009 was $81,673.88, excluding attorney's fees and costs of collection, (Docket Entry No. 29 ¶ 36), although Dr. Lanier denied this.

[4]Dr. Lanier agrees only that the *initial* installments were $2,782.00, but as will be shown in the legal discussion to follow, the note did not denominate any installments as "initial" installments.

5

was executed. (Docket Entry No. 29 at ¶¶ 9-10.) In other words, the note called for: (1) six (6) months of interest-only payments; (2) thereafter, payments of $2,782.00; (3) payments applied first to interest accrued to date with the remaining portion, if any, applied to principal; and (4) any unpaid interest and principal payable at maturity. (Docket Entry No. 19, Memorandum of Law at 4-5; Docket Entry No. 21, Perigo Decl. ¶ 4.)

Dr. Lanier claims the note was to be paid in installments with the final installment due on or before fifteen (15) years from the date of the note. (Docket Entry No. 29 at ¶¶ 9-10.) She argues:

> The term of the note, fifteen years, is the only term of the note that is not variable. The payments may vary, the interest rate may vary, but not the term of the note. The note does not contemplate a balloon payment, as one is not mentioned in the note. Since the note mandates that the monthly payments are to include principal and interest, it is explicit that the monthly payments must amortize the note within fifteen years.

(Docket Entry No. 32, Memorandum at Law at 2.) Dr. Lanier avers: "Defendant SunTrust now claims that it failed to adjust my monthly payment to accommodate the increased rate of interest so that the entire indebtedness would be paid in full within fifteen years as contemplated by the Note." (Docket Entry No. 35, Lanier Aff. ¶ 7.)[5]

---

[5] Without filing a separate motion, SunTrust asks the Court to strike Dr. Lanier's affidavit because the notarization paragraph signed by Dr. Lanier's counsel, Mr. Hirsch, states that Dr. Lanier certifies under oath "that the information contained in the foregoing complaint is true and correct, to the best of her information[,] knowledge and belief." (Docket Entry No. 35 at 4.) While the Court agrees with SunTrust that certification of facts based on information, knowledge and belief is not sufficient for purposes of summary judgment, it is obvious to the Court that Mr. Hirsch made a scrivener's error when he utilized the same notarization paragraph that was previously used to verify Dr. Lanier's state complaint for an injunction. Because Dr. Lanier began the affidavit with an acknowledgment that her statements were sworn under oath and that she had personal knowledge of the facts and information stated in the affidavit, the Court will not strike the affidavit based on form.

Also without filing a separate motion, SunTrust asks the Court to strike those statements of undisputed material fact made by Dr. Lanier that are bunched together and/or not supported by citations to the record in compliance with Local Rule 56.01(b), and to strike much, if not all, of the

The parties agree that, throughout the 15-year loan repayment period, SunTrust sent Dr. Lanier monthly invoices which included notice of the outstanding principal balance, applicable floating interest rate for that month, late fees, and monthly installments due under the terms of the note. (Docket Entry No. 18-13, Ex. 13; Docket Entry No. 21, Perigo Decl. ¶ 6.) The parties also agree, however, that during the term of the note, SunTrust adjusted the interest rate, if at all, on the fourteenth (14th) day of every third month rather than on the first business day of the calendar quarter. (Docket Entry No. 20, Perigo Decl. ¶ 6.) Dr. Lanier claims that, because the interest rate did not vary on the first day of the calendar quarter as required under the terms and conditions of the note, SunTrust could not and did not bill monthly the amount necessary to amortize the note within fifteen years. (Docket Entry No. 35, Lanier Aff. ¶ 10.)

The loan repayment history has been recalculated to reflect changes in the rate of interest, if any, made effective on the first business day of the calendar quarter per the terms of the note rather than on the fourteenth (14th) day of every third month during the loan repayment period. Based on the corrected loan calculation, SunTrust's original loan calculation under-accrued interest charges to Dr. Lanier by $808.28 during the loan repayment period. (Id. ¶¶ 7-8.)

Dr. Lanier claims that SunTrust, in order to collect the amount it claims she owes, had representatives take her to lunch and ask her to sign financial documents in blank. (Docket Entry No. 35, Lanier Aff. ¶ 11.) She further alleges that SunTrust offered to loan her additional money if she would sign the blank financial documents. (Id.)

---

content of Dr. Lanier's affidavit. The Court declines to do so; however, the Court will take into consideration when analyzing the legal contract issues those portions of Dr. Lanier's affidavit which constitute inadmissible parol evidence.

If SunTrust is allowed to sell the property, Dr. Lanier attests she will suffer irreparable harm. (Docket Entry No. 35, Lanier Aff. ¶ 12.) She claims she will suffer loss of reputation and standing in the medical community within which she practices in that her colleagues and patients will know she lost the property used as her office and she will have to make hasty substandard accommodations to see her patients and continue to practice medicine, all of which will cast her in a negative light; she will lose real property uniquely located within the medical community within which she practices; and she will suffer loss of patients and future income, for all of which there is no adequate remedy at law.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to

8

support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. ANALYSIS

"Contract law in Tennessee plainly reflects the public policy allowing competent parties to strike their own bargains." Ellis v. Pauline S. Sprouse Residuary Trust, 280 S.W.3d 806, 814 (Tenn. 2009). This Court is not at liberty to make a new contract for the parties who have spoken for themselves. Id. The "courts do not concern themselves with the wisdom or folly of a contract . . . and will not relieve a party of its contractual obligations simply because the contract later proves to be burdensome or unwise." Id. When the parties have reduced their agreement to writing, the law favors enforcing the contract as written, and in the absence of fraud, mistake, or other supervening legal reason, the court should construe an unambiguous written contract as the court finds it. Id.

The Court's role is to ascertain the intent of the parties. Bradson Mercantile, Inc. v. Crabtree, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999). "If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms." Id. The Court must examine the language used in the contract as it is understood in its plain, ordinary and popular sense by giving words their usual and natural meanings. Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn. 1975); Ballard v. North Am. Life and Cas. Co., 667 S.W.2d 79, 82 (Tenn. Ct. App. 1983). If the

9

wording of a written contract is clear and unambiguous, the Court must interpret it as it is written, rather than according to an unexpressed intention of one of the parties. Sutton v. First Nat'l Bank of Crossville, 620 S.W.2d 526, 530 (Tenn. Ct. App. 1981). Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made. Bradson Mercantile, Inc. 1 S.W.3d at 652.

The Court concludes as a matter of law that the promissory note Dr. Lanier signed on March 18, 1993 is not ambiguous. Because the Court finds the promissory note is unambiguous, Dr. Lanier's statements which attempt to persuade the Court to accept her interpretation of the note constitute inadmissible parol evidence. See Bradson Mercantile, Inc., 1 S.W.3d at 652.

According to the express language of the promissory note, Dr. Lanier agreed to repay the $300,000.00 principal of the loan plus interest as follows: interest only payable monthly beginning one (1) month from the date of the note for a period of six (6) months; thereafter, a monthly payment of $2,782.00, including principal and interest, payable monthly beginning seven (7) months from the date of note, with the further provision that each installment "shall be applied first to interest accrued to date of receipt of said installment, and the balance, if any, to principal," and "the balance of principal and interest due and payable on or before fifteen (15) years from date." The note did not refer to "initial" monthly payments or equal monthly payments to amortize the loan; it mentioned only "monthly payments." Although the note did not use the term "balloon payment," the express language of the note clearly contemplated that any payments Dr. Lanier made would be first applied to satisfy accrued interest, any balance of the payment would then be applied to principal, and she would pay any outstanding balance of principal and interest on or before fifteen (15) years from the date of the note. Contrary to Dr. Lanier's position, there is no express language

10

in the note that required SunTrust to adjust the monthly payment amount so that the entire balance of principal and interest owed on the note amortized within the fifteen-year period.

The plain language of the note also provided that the interest rate would float, after starting at 7.5% on March 18, 1993. The note stated that "[e]ffective the first business day of the calendar quarter following first disbursement date of the loan, the rate of interest herein shall become the sum of one and one-half (1.5%) percentage points and the amount of the lower prime rate in effect and as published in The Wall Street Journal under Money Rates." (Docket Entry No. 35-1 at 2.) The note further provided that the "change in rate of interest herein shall become effective on the first business day of the quarter and each quarter thereafter. At such time as the interest rate changes, the periodic installment **may be adjusted** to reflect such change." (Id. (emphasis added).) The phrase "may be adjusted" is permissive language. The sentence does not say "shall" or "must"; it says "may." The note gave SunTrust authority to adjust the periodic installments to reflect a higher or lower interest rate, but the note did not require or mandate such adjustments.

Further, the note provided that SunTrust "should give written notice to Borrower of each increase or decrease in the interest rate within 30 days after the effective date of each change; however, the fluctuation of the interest rate is not contingent on whether the notice is given." (Id.) This portion of the note is also written in completely permissive language. While SunTrust "should" inform Dr. Lanier each time the interest rate fluctuated, the note did not require such notice, and the actual fluctuation of the interest rate did not depend on whether SunTrust sent Dr. Lanier notice of an interest rate change.

Dr. Lanier also admitted that she received monthly statements from SunTrust which included notice of the outstanding principal balance, applicable floating interest rate for that month, late fees,

11

and monthly installments due under the terms of the note. There is no dispute that SunTrust failed to adjust the floating interest rate on the first business day of the quarter and each quarter thereafter. SunTrust adjusted the interest rate, if at all, on the fourteenth (14th) day of every third month rather than on the first business day of the calendar quarter. (Docket Entry No. 20, Perigo Decl. ¶ 6.)

This calculation error on the part of SunTrust, however, does not constitute a material breach of the promissory note. Dr. Lanier agreed that SunTrust's recent recalculation of the interest that should have been charged during the fifteen-year period of the note, using the appropriate method of interest calculation as set forth in the note, favored Dr. Lanier. The recalculation showed that SunTrust undercharged Dr. Lanier by $808.28 during the loan repayment period, and SunTrust has agreed not to seek payment of that amount of interest. Thus, Dr. Lanier has not produced sufficient evidence from which a trier of fact could find that SunTrust committed the first uncured material breach of the promissory note, rendering SunTrust unable to recover damages stemming from Dr. Lanier's failure to pay the note in full as required by the terms of the note. See Carter v. Krueger, 916 S.W.2d 932, 936 (Tenn. Ct. App. 1995).

Finally, Dr. Lanier is not entitled to summary judgment based on her unsupported statement that she paid the $300,000 loan with interest in full. "One who asserts payment as a defense has the burden of proving payment." U.S. Small Bus. Admin. v. McDonald, 772 F.2d 909, 1985 WL 13600 at *1 (6th Cir. 1985) (citing FDIC v. Waldron, 630 F.2d 239, 241 (4th Cir. 1980)). Payment connotes tender by the debtor with the intention to satisfy the debt coupled with its acceptance as satisfaction by the creditor. Id. Dr. Lanier failed to submit any evidence that she tendered full payment of principal and interest due on the note to SunTrust and that SunTrust received and accepted the payment. See id. It is not relevant to legal construction of the promissory note terms that Dr. Lanier

12

alleges SunTrust representatives took her to lunch and asked her to sign documents in blank or offered to loan her more money if she would sign the documents.

## IV. CONCLUSION

For all of the reasons stated, SunTrust's motion for summary judgment will be granted and Dr. Lanier's cross-motion for summary judgment will be denied. SunTrust is entitled to judgment on Count I of the Counterclaims for recovery on the promissory note and Count III of the Counterclaims for a declaratory judgment. The Court denies SunTrust recovery on Count II of the Counterclaims because an action for unjust enrichment may be pursued only if SunTrust exhausted all contractual remedies against Dr. Lanier and did not prevail. Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005). Here, SunTrust prevails on Count I, the contract cause of action. Dr. Lanier's Complaint will be dismissed with prejudice.

The Court will grant the relief requested by SunTrust, including judgment in an amount equal to the entire balance owed, as of the date of entry of judgment, on the promissory note Plaintiff executed on March 18, 1993, dissolution of the Chancellor's injunction, a declaratory judgment that SunTrust is entitled to a non-judicial foreclosure Deed of Trust public sale[6] pursuant to the terms of the Deed of Trust and applicable law, and an award of attorney's fees and expenses incurred in collecting on the promissory note.

An appropriate Order will be entered.

                                              ROBERT L. ECHOLS
                                              UNITED STATES DISTRICT JUDGE

---

[6]Although SunTrust included a request for private sale in its prayer for relief in the Counterclaim, the Deed of Trust provides for public sale. (Docket Entry No. 18-3, Deed of Trust at 3 ¶ 4.)

13